FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
*NOVEMBER 20, 2026 *
BROOKLYN OFFICE

JPL:JV
F. #2024R00093

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------- X

UNITED STATES OF AMERICA

- against -

JASON DONI SCHLESSEL,

Defendant.

--------------------------- X

INDICTMENT

Cr. No. 26-CR-324
(T. 18, U.S.C., §§ 981(a)(1)(C), 982(a)(1), 982(b)(1), 1343, 1957(a), 1957(b), 1957(d)(1), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

Judge Natasha C. Merle
Magistrate Judge Robert M. Levy

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

### I. The Defendant and Relevant Individuals and Entities

1. The defendant JASON DONI SCHLESSEL was a resident of Flushing, New York.

2. Jolt Supplies LLC ("Jolt") was a limited liability company registered in New York State on or about July 17, 2020, that was owned and controlled by the defendant JASON DONI SCHLESSEL.

3. Jason Schlessel Consultancy LLC ("JSC") was a limited liability company registered in New York State on or about October 20, 2021, that was owned and controlled by the defendant JASON DONI SCHLESSEL.

4. Banks #1 through #5, entities the identities of which are known to the Grand Jury, were financial institutions headquartered in the United States and doing business

within the Eastern District of New York. Accounts at Banks #1 through #5 were insured by the Federal Deposit Insurance Corporation.

5. Gambling Company #1, an entity the identity of which is known to the Grand Jury, was a licensed gambling company headquartered in Pennsylvania that offered online casino and sports betting services nationwide.

6. John Doe #1, an individual whose identity is known to the Grand Jury, was a resident of Flushing, New York.

7. John Doe #2, an individual whose identity is known to the Grand Jury, was a resident of Flushing, New York.

8. John Doe #3, an individual whose identity is known to the Grand Jury, was a resident of Lawrence, New York.

II. The Fraudulent Scheme

9. In or about and between May 2020 and April 2022, the defendant JASON DONI SCHLESSEL, together with others, engaged in a scheme to defraud investors and prospective investors in connection with the purported purchase, importation, sale and resale of personal protective equipment ("PPE"), including masks, face shields, fluid resistant gowns and surgical goggles, by SCHLESSEL, Jolt and JSC. As part of the scheme, SCHLESSEL made a series of false and fraudulent statements and material misrepresentations to investors and prospective investors about, among other things: (a) his use of investors' funds; (b) his suppliers, assets, inventory and clients; and (c) guaranteed rates of return on investments. Rather than use investors' funds to purchase and resell PPE as promised, SCHLESSEL misappropriated and used investors' funds for his own personal use and benefit, including to engage in online gambling

and to repay earlier investors. Ultimately, the scheme collapsed, resulting in multi-million dollar losses to investors.

10. As part of the scheme, the defendant JASON DONI SCHLESSEL falsely represented to investors and prospective investors that their funds would be used to purchase imported PPE for resale to domestic buyers for a profit. SCHLESSEL solicited investments from numerous individuals, including friends, prior investors, fellow volunteers at the Queens Hatzolah emergency medical service and other members of the Orthodox Jewish community, including in Flushing, Queens. SCHLESSEL also made similar material misrepresentations to existing investors in order for them to solicit investments from new investors for SCHLESSEL. For example, John Doe #1 relied on SCHLESSEL's misrepresentations to solicit an investment from John Doe #3 on SCHLESSEL's behalf.

11. The defendant JASON DONI SCHLESSEL also misrepresented to investors and prospective investors that he had already secured shipments of PPE that were en route from overseas, and that he either had already sold, or already had buyers ready to purchase, the PPE he was purportedly importing. On multiple occasions, SCHLESSEL provided, or caused to be provided, fabricated PPE purchase orders and invoices to investors and prospective investors. In truth, SCHLESSEL did not have PPE suppliers, shipments, inventory or customers as he had represented.

12. To induce investors to invest with him, the defendant JASON DONI SCHLESSEL also promised guaranteed rates of return between approximately 8-30 percent and that those returns would be paid within 14 to 60 days of investment. At times, SCHLESSEL memorialized the investments' terms, including the promised performance and returns, in investor agreements.

13. In furtherance of the scheme, the defendant JASON DONI SCHLESSEL transmitted, and caused to be transmitted, the investor agreements and the falsified purchase orders and invoices, among other communications, by email and encrypted message between himself and investors and prospective investors. On multiple occasions, these transmissions were sent and received from within the Eastern District of New York. Examples of some of these transmissions include the following:

(a) On or about December 3, 2021, SCHLESSEL sent John Doe #1 an encrypted message attaching, among other things, a loan agreement for approximately $130,000.

(b) On or about December 30, 2021, SCHLESSEL sent John Doe #1 an encrypted message attaching, among other things, a promissory note for approximately $1 million, and a personal guaranty, in connection with a prospective investment by John Doe #3 on which John Doe #1 was acting as an intermediary. When John Doe #1 asked SCHLESSEL to "Advise if approved to send" to John Doe #3, SCHLESSEL replied "Less [sic] goooo ."

(c) On or about February 4, 2022, SCHLESSEL sent John Doe #2 an email that, among other things, attached a promissory note for approximately $400,000, and a personal guaranty, and included wiring instructions for a bank account held in the name of JSC.

(d) On or about February 10, 2022, SCHLESSEL sent John Doe #1 an encrypted message attaching a fraudulent purchase order purporting to show that SCHLESSEL purchased over $2 million in PPE.

(e) On or about February 17, 2022, SCHLESSEL sent John Doe #2 an email that stated, in part, "The deal is read[y] to go and to get funded. After crunching numbers, I can offer 20% for 30 days if you go in for 200k! If less than 200k, would like to be at 15%. Let me know what I can count you in for and I will send over docs and wiring info." Later that

day, SCHLESSEL sent John Doe #2 an email that, among other things, attached a promissory note for approximately $200,000, and a personal guaranty, and included wiring instructions for a bank account held in the name of JSC.

14. To lead investors and prospective investors to believe that their investments were secure, defer investors' requests for the return of their investments and delay discovery of his scheme, the defendant JASON DONI SCHLESSEL also misled investors and prospective investors about the safety of their investments by, among other things, offering personal guarantees, misrepresenting the value of his personal assets, fabricating additional documents and lying about his accounts being temporarily frozen.

15. For example, on or about December 14, 2021, SCHLESSEL sent an encrypted message to John Doe #1 that attached falsified account statements for bank accounts that SCHLESSEL controlled. The account statements purported to show that SCHLESSEL had positive cash flows. In truth, the account statements, including the stated deposits and withdrawals, had been altered to inflate the cash flow by approximately $1 million for each month and for each account.

16. Between approximately May 2020 and April 2022, the defendant JASON DONI SCHLESSEL obtained over $36.7 million from at least 47 investors, with individual investments ranging between approximately $5,000 and $3.25 million. Investor funds were often sent by investors located within the Eastern District of New York to bank accounts controlled by SCHLESSEL via interstate wire transfer. Examples of some of these transmissions include the following:

(a) On or about December 6, 2021, John Doe #1 wired approximately $30,000 to an account held in SCHLESSEL's name at Bank #1.

(b) On or about December 30, 2021, John Doe #3 wired approximately $1 million to an account held in the name of Jolt at Bank #2.

17. Of the more than $36.7 million in investor funds he obtained, the defendant JASON DONI SCHLESSEL diverted over $26 million to online casino and sports betting services, including to Gambling Company #1, of which he lost approximately $4.7 million from gambling. Of the remaining approximately $32 million, SCHLESSEL used approximately $28.5 million to repay earlier investors, and misappropriated approximately $3.5 million for his own personal use and benefit.

COUNT ONE
(Wire Fraud)

18. The allegations contained in paragraphs one through 17 are realleged and incorporated as if fully set forth in this paragraph.

19. In or about and between May 2020 and April 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JASON DONI SCHLESSEL, together with others, did knowingly and intentionally devise a scheme and artifice to defraud investors and prospective investors, and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, one or more writings, signs, signals, pictures and sounds, to wit: emails, encrypted messages, wire transfers and other electronic payments and communications.

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

COUNTS TWO THROUGH FOUR
(Engaging in Monetary Transactions in Criminally Derived Property)

20. The allegations contained in paragraphs one through 17 are realleged and incorporated as if fully set forth in this paragraph.

21. On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant JASON DONI SCHLESSEL, together with others, did knowingly and intentionally engage and attempt to engage in monetary transactions in and affecting interstate commerce, by, through and to one or more financial institutions, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, as follows:

| **Count** | **Approx. Date** | **Description** |
|---|---|---|
| TWO | Dec. 6, 2021 | Wire transfer of approximately $150,000 from a SCHLESSEL account at Bank #1 ending x2060 to a Gambling Company #1 bank account. |
| THREE | Dec. 31, 2021 | Wire transfer of approximately $500,000 from a Jolt account at Bank #2 ending x2838 to a SCHLESSEL account at Bank #3 ending x9909. |
| FOUR | Feb. 7, 2022 | Wire transfer of approximately $150,000 from a SCHLESSEL account at Bank #4 ending x5293 to a John Doe #3 account at Bank #5 ending x6316. |

(Title 18, United States Code, Sections 1957(a), 1957(b), 1957(d)(1), 2 and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNT ONE

22. The United States hereby gives notice to the defendant that, upon his conviction of the offense charged in Count One, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States

Code, Section 2461(c), which require any person convicted of such offense to forfeit any property, real or personal, which constitutes or is derived from proceeds traceable to such offense.

23. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS TWO THROUGH FOUR

24. The United States hereby gives notice to the defendant that, upon his conviction of any of the offenses charged in Counts Two through Four, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offenses to forfeit any property, real or personal, involved in such offenses, or any property traceable to such property.

25. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL,

s/

FOREPERSON

By David Pitluck, Assistant U.S. Attorney

JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK